Jan Hamilton #08163
Chapter 13 Trustee
PO Box 3527
Topeka, Kansas  66601-3527
(785) 234-1551

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE:

JILL ANNETTE REITER,  CASE NO.:  14-40074-13

    Debtor.

## MOTION TO PERMIT DISTRIBUTION OF PROCEEDS RESULTING FROM THE SALE OF DEBTOR'S INTEREST IN A TRADEMARK AND ASSETS ASSOCIATED WITH THAT TRADEMARK

COMES NOW the Chapter 13 Trustee and moves the Court for an Order permitting distribution of proceeds resulting from the 11 U.S.C. 363 sale of Debtor's interest in a trademark and assets associated with that mark.[1]  In support thereof, your Trustee shows the Court:

I.    DETAILS OF THE SALE OF THE ASSETS

    a. On April 26, 2017, Debtor filed a 363 Motion, which sought approval of the Court to sell certain assets, including a trademark and personal property associated with the mark. (Doc. 136).

    b. The Order approving the sale of the property was entered by the Court on October 4, 2017.   (Doc. 190).

---

[1] All references hereafter to the United States Bankruptcy Code are under 11 U.S.C, unless otherwise stated.

    c. The sale was conducted on November 3, 2017. The net proceeds, received from Roy Upshaw, after credit for a $27,000 deposit, were $375,000. There were no higher offers received. Your Trustee and the Debtor were unable to determine a higher value or to obtain any information suggesting a higher bidder could be obtained.

II. EXPLANATION OF MONIES AVAILABLE TO PAY CREDITORS

    a. Actual numbers for funds on hand and proposed disbursement may vary from those below because of interest due, funds on hand from plan payments, and other minor factors.[2]

    b. Funds Received.

        i. $348,000.00 (received from Upshaw November 3, 2017) minus $34,800.00 (statutory trustee fee of 10%) = $313,200.00.

        ii. $27,000.00 (received from Upshaw as a deposit on July 31, 2017) minus $2,673.00 (statutory trustee fee of 9.9%) = $24,327.00.

        iii. $25,000.00 (received from an unnamed bidder (the "Stalking Horse")[3] as a deposit July 17, 2017.) No trustee fee will be

---

[2] For instance, the Trustee has $1,244.83 on hand from plan payments received prior to the employer pay release being issued, which will be disbursed pursuant to the plan.

[3] Definition of Stalking Horse: https://www.investopedia.com/terms/s/stalkinghorsebid.asp

**Example:** Valeant Pharmaceuticals International Inc. (NYSE: VRX) placed a stalking-horse bid for certain assets of bankrupt Dendreon. The initial offer was $296 million in cash on Jan. 29, 2015. However, due to competition from other parties, the offer was raised to $400 million about a week later. At a bankruptcy hearing, the court formally approved Valeant's role as a stalking horse bidder. The company was entitled to receive a breakup fee and expense reimbursement if its bid was unsuccessful. A time limit was given for parties to submit bids, with a deadline

        retained from these funds, as such funds were held in escrow until resolution of the pending matters. Your Trustee prays the Court permit refund of the $25,000.00 deposit to the Stalking Horse.

  iv.  Statutory Trustee fees of $37,473.00 were taken on the $375,000.00 received from Upshaw as required by 11 U.S.C. 586(e)(1)(B)(i).[4] The numbers above reflect the statutory trustee fees as of the date the sums referenced were received.[5]

  v.  The balance on hand from the sale of the trademark and related assets and available for disbursement is therefore $337,527.00.

c.  Balances Owed to Claimants in the Bankruptcy.

  i.  Administrative Fees.

    1.  Attorney fees previously awarded $54.66.

    2.  Closing costs per the plan $300.00.

    3.  Total administrative fees still owed = $354.66

  ii.  Secured Creditors.

---

of Feb. 10, 2015, and an auction was to be held two days later. Ultimately, later that month, the bankruptcy judge approved the sale to Valeant for $495 million, although the deal changed to include other assets."

[4] §586(e)(1) provides, in part: " (1) The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under chapter 12 or 13 of title 11, shall fix— . . .
(B) a percentage fee not to exceed—
(i) in the case of a debtor who is not a family farmer, ten percent…"

[5] The Trustee's fee changed from 9.9% to 10.0% on October 1, 2017.

1. Claim #3 Buckeye Title Loans $2452.04 plus $19.42 interest thru December (4.75%).

2. Claim #4 Internal Revenue Service $73,783.95 plus $368.92 interest thru December ($3.0%).[6]

3. Claim #8 CoreFirst Bank and Trust $6,135.77 plus $48.58 interest thru December (4.75%).

4. Claim #9 Capital Federal Savings

    a. $8,895.27 plus $66.72 interest thru December (4.5%).

    b. $23,760.53 (no interest).

    c. $23,625.17 post petition secured (no interest).

5. Total secured claims still owed = $138,652.73 plus $503.64 interest thru December.

iii. Priority Creditors.

1. Claim #6 Kansas Department of Revenue $14,230.27

2. Claim #7 Kansas Department of Revenue (withholding) $865.00.

3. Total priority claims still owed = $15,095.27.

iv. Unsecured Creditors.

1. Total general unsecured claims still owed = $134,923.46.

v. Recapitulation.

---

[6] The secured claim of the IRS would be paid first as its claim shows a lien on all property of the debtor. Its claim would follow the proceeds of the sale of the mark and be paid first after trustee fees.

Jill Annette Reiter
Case No. 14-40074
Trustee's Motion to Permit Distribution of Proceeds
Page 5

1. Total Administrative Fees = $354.66
2. Total Secured Creditors = $138,652.73
3. Total Priority Creditors = $15,095.27
4. Total General Unsecured Creditors = $134,923.46
5. **Total balance owed for all claims (through December 2017) = $289,529.76.**

d. Stalking Horse.

i. In addition to the $25,000.00 refund of the deposit to the Stalking Horse requested above, your Trustee also prays that the Court permit the distribution of $25,000.00 from the funds available as a "stalking horse fee" in compensation for his efforts in facilitating an appropriate settlement in this case. So, from the $337,527.00 funds available from the sale, the Trustee would disburse $25,000.00 to the Stalking Horse, leaving $312,527.00 available for distribution to creditors.

e. Additional Administrative Expenses.

i. Under the proposed distribution above, after payment of the Stalking Horse fee and paying all allowed claims, $22,997.24 remains available for payment of additional administrative expenses that may be allowed.

f. Legal Basis for Distribution.

    i. §507 priorities govern how the money from the asset would generally be paid out.

    https://www.law.cornell.edu/uscode/text/11/507

    ii. The priority scheme in §507 does not include secured debt. For our purposes, it is administrative, priority, unsecured and general unsecured. §1322(a)(2) incorporates §507, to the extent that priority claims need to be paid in full. If there are insufficient funds to pay all allowed claims in full, secured claims would be paid last, except for the IRS.

    iii. Substantial additional attorney fees claims are anticipated. Payment of fees in excess of $22,997.24 will negatively impact secured creditors first, except for the IRS, before any negative impact will accrue to the detriment of unsecured creditors.[7]

WHEREFORE, The Chapter 13 Trustee prays that the Court approve the distribution of funds received from the 363 Motion of the Debtors in accordance with the details of this motion, and for such other relief as the Court may deem appropriate.

.                                       Submitted by:

                                         s/ Jan Hamilton
                                         Jan Hamilton #08163, Chapter 13 Trustee
                                         Teresa L. Arnold #21586, Staff Attorney

---

[7] Amount of attorney fees that could be paid without negative impact upon secured claims could be less if distribution is made after December 31, 2017, due to increased amount of accrued interest on claims.

PO Box 3527
Topeka, Kansas 66601-3527
(785) 234-1551
(785) 234-0537 Fax
jan.hamilton@topeka13trustee.com
teresa.arnold@topeka13trustee.com

## CERTIFICATE OF SERVICE

I certify that I electronically filed the Chapter 13 Trustee's Motion and Notice of Hearing with the Court via the CM/ECF system, which notices all interested parties using the CM/ECF system. I have also mailed this pleading first class, to the Debtor and parties identified on the attached creditor matrix on this date: **December 8, 2017.**

Respectfully submitted,

s/ Teresa L. Arnold
Teresa L. Arnold #21586